# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS) Order re: Plaintiff's Motion for Default Judgment (DE 29)

### I.    INTRODUCTION

On January 5, 2015, Christopher Harrison ("Plaintiff"), individually and on behalf of the United States of America, filed a First Amended Complaint against Shu-Hwa Baran ("Defendant"). Plaintiff asserted the following claims: (1) violation of False Claims Act (31 U.S.C. § 3729 *et seq.*) ("FCA"); (2) retaliation (California Civil Code § 1942.5); and (3) intentional infliction of emotional distress. Plaintiff later sought to dismiss his claim for intentional infliction of emotional distress in his Motion for Default Judgment. Defendant failed to file an answer to the First Amended Complaint and the clerk entered default against her on April 1, 2015.

On July 15, 2015, Plaintiff filed the present Motion for Default Judgment. Plaintiff seeks the following: (1) damages and civil penalties pursuant to the FCA in the amount of $619,447.00; (2) actual and punitive damages for retaliation in the amount of $6,000.00; and (3) attorney's fees and costs.

For the following reasons, the Court **GRANTS** Plaintiff's Motion.

### II.    FACTUAL BACKGROUND

This factual background is based on the allegations in the First Amended Complaint. Plaintiff is a United States veteran who relies on Social Security Disability Insurance ("SSDI") for most of his income after suffering a spinal cord injury. In September 2006, Plaintiff obtained a Section 8 voucher for housing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

Through the Section 8 voucher program, the federal government assists low-income families, the elderly, and disabled persons to obtain decent, safe, and sanitary housing in the private market. The United States Department of Housing and Urban Development ("HUD") enters into annual contribution contracts with public housing agencies. Through these contracts, HUD provides funding to the public housing agencies to use as rent subsidies to pay landlords who rent to tenants with Section 8 vouchers. Tenants then look for private housing available for the total amount of rent that the public housing agency approves.

Once a landlord agrees to rent to a Section 8 tenant, the two parties enter into a proposed lease agreement for a specified total rent to owner. The parties then present the proposed lease agreement to the public housing agency for approval. Once the public housing agency approves the lease: (1) the lease agreement provisions become binding on both the landlord and tenant, and (2) the public housing agency and the landlord enter into a separate Housing Assistance Payments Contract ("HAP Contract"), a standard and uniform contract promulgated by HUD.

The HAP Contract establishes the total rent to the owner, the tenant's portion of the rent, and the amount that the public housing agency is responsible for. Generally, a tenant's portion of the rent is 30% to 40% of their monthly income and the housing subsidy covers the remainder of the rent balance. The HAP Contract also requires the owner to certify that except for the rent to owner, the owner has not and will not receive any payments or other consideration from the tenant, the public housing agency, HUD, or any other public or private source for the rental of the contract unit during the HAP contract term. Moreover, the owner must immediately return any excess rent payment to the tenant. The HAP Contract explicitly states that the owner does not have a right to receive the housing assistance payments unless he or she has complied with all provisions of the HAP Contract.

The Code of Federal Regulations also contains provisions that address these issues. Pursuant to 24 C.F.R. § 982.451(4)(I), the portion of the rent that the tenant pays the owner may not exceed the total rent to the owner minus the public housing agency payment to the owner. In addition, 24 C.F.R. § 982.451(4)(ii) mandates that "the owner may not demand or accept any rent payment from the tenant in excess of this maximum, and must immediately return any excess rent payment to the tenant." Moreover, 24 C.F.R. § 982.507(a)(2)(I) requires the public housing agency to redetermine the reasonable rent before any increase in the rent to owner.

After obtaining the Section 8 voucher, Plaintiff initially rented an apartment from Defendant in San Pedro, California. Under the HAP Contract between the Housing Authority of the City of Los Angeles ("HACLA") and Defendant, Defendant was to receive $1,050.00 a month for rent. In 2008, Plaintiff notified Defendant that he would no longer be staying since the apartment did not have an elevator or wheelchair ramp to accommodate Plaintiff's disability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

     In 2009, Plaintiff sought to rent another apartment from Defendant that would better accommodate his disability. Defendant agreed to continue accepting the Section 8 voucher from Plaintiff, but she also demanded that Plaintiff pay extra rent directly to Defendant on the side. In September 2009, Plaintiff and Defendant entered into a lease agreement for the new apartment, which stated that the monthly rent would be $1,050.00.

     Defendant and the HACLA entered into a HAP Contract after the HACLA approved the lease agreement. The HAP Contract stated that Defendant would receive a total monthly rent of $1,050.00. The HAP Contract also provided the exact portion of the rent that Plaintiff was responsible for and the remaining balance that the HAP subsidy would cover.

     Between October 2009 and September 2013, Defendant received thousands of dollars in side rent payments from Plaintiff, while also collecting the full amount of the HAP subsidy from the HACLA every month. Throughout this period, the HACLA neither increased the total rent to owner nor authorized Defendant to raise the rent.

     In 2013, Plaintiff's HACLA case worker informed him that it was unlawful for Defendant to charge Plaintiff the side rent payments and advised Plaintiff to only continue paying the portion of the rent that the HAP Contract required him to pay. At the advice of his HACLA case worker, Plaintiff attempted to pay rent for September 2013 solely for the amount designated by the HAP Contract. Defendant rejected the check and returned it to Plaintiff. Plaintiff then mailed the rent check to Defendant via certified mail, which Defendant then cashed.

     On September 19, 2013, Defendant executed and served on Plaintiff a "90-Day Notice to Quit," which demanded that Plaintiff move out of his home within 90 days. On October 22, 2013, Defendant's counsel mailed a "90-Day Notice of Termination and Non-Renewal of Section 8 Contract" to Plaintiff, which purported to cancel the Section 8 Contract and raise Plaintiff's rent. The notice stated that Plaintiff would be responsible for the full monthly rent within 90 days. On November 2, 2013, Defendant left multiple messages on Plaintiff's answering machine that consisted of aggressive, abusive, and profane language regarding his tenancy.

### III.    JUDICIAL STANDARD

     Federal Rule of Civil Procedure 55(b) allows for a court-ordered default judgment following entry of default by the clerk when a party has failed to plead or otherwise defend a case. Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule of the Central District of California 55-1, the application for default judgment shall set forth the following information: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice has been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).

Entry of default does not automatically entitle a plaintiff to a court-ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Instead, the decision whether to enter a default judgment is within the court's sound discretion. *Id*. The Ninth Circuit has enumerated the following factors (collectively, the "*Eitel* Factors") which may be considered by courts in exercising discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In general, once the Clerk has entered default, all factual allegations in the complaint will be taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). However, if the Plaintiff is seeking money damages, the Plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the Complaint. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

## IV. DISCUSSION

For the following reasons, the Court grants default judgment and awards the following: (1) $608,407.00 to the United States Government for damages and civil penalties; (2) Plaintiff's 27% *qui tam* share of the proceeds to the United States Government; (3) $6,000.00 in punitive damages to the Plaintiff for retaliation; and (4) reasonable attorney's fees and costs to the Plaintiff.

### A. Plaintiff Has Satisfied the Procedural Requirements of Default Judgment

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Central District of California Local Rule 55-1. The Court makes the following findings:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367 because it forms part of the same case or controversy as the federal law claims.

2. The Clerk entered default against Defendant on April 1, 2015.

3. The Defendant is not a minor, incompetent person, in military service or otherwise exempted under the Servicemembers Civil Relief Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

4. On July 15, 2015, the Plaintiff served upon Defendant the Notice of Motion for Default Judgment.

**B. The *Eitel* Factors Weigh in Favor of Default Judgment**

1. *Possibility of Prejudice to Plaintiff*

The Court first considers whether Plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. A plaintiff suffers prejudice when denying default judgment would leave the plaintiff without a remedy. *E.I. Du Pont de Nemours and Co. v. Drabek*, No. CV 12-10574, 2013 WL 4033630, at *4 (C.D. Cal. May 3, 2013). Without default judgment, Plaintiff will be left without a remedy or means to recover the payments wrongfully claimed by Defendant. Therefore, as Plaintiff would suffer prejudice if default judgment were denied, the Court finds that this factor favors entry of default judgment against Defendant.

2. *Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint*

The Court then considers the second and third *Eitel* factors, which assess the substantive merits of Plaintiff's claims and the sufficiency of its pleadings. *Eitel*, 782 F.2d at 1471. To warrant default judgment, the allegations in the Complaint must be sufficient to state a claim upon which Plaintiff can recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). As discussed above, when a Court reviews a motion for default judgment, it must accept the well-pleaded allegations of the complaint relating to liability as true. *TeleVideo*, 826 F.2d at 917-18. In the instant action, Plaintiff asserts the following two claims: (1) violation of FCA (31 U.S.C. § 3729 et seq.) and (2) retaliation (California Civil Code § 1942.5).

a. *Defendant Violated FCA*

Pursuant to the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" from the United States Government is liable for civil penalties. 31 U.S.C. § 3729(a)(1)(A). To sufficiently plead a claim under the FCA in the Ninth Circuit, the plaintiff must establish the following: (1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material, causing; (4) the government to pay out money or forfeit moneys due. *U.S. ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006).

In the Ninth Circuit, a party can sufficiently establish the first element under a theory of express or implied false certification. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 995 (9th Cir. 2010). Express certification occurs when "the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Id.* at 998. On the other hand, a party can prove implied false certification by showing that the "entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

for payment even though a certification of compliance is not required in the process of submitting the claim." *Id*. Furthermore, HUD published a Housing Choice Voucher Program Guidebook which defines "fraud" and "abuse" in the Section 8 Program as the following:

> A single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, omission, or concealment of a substantive fact. Fraud and abuse result in the payment of housing choice voucher program funds in violation of program requirements. It often occurs when families or owners intentionally fail to report required information or report incorrect information to obtain benefits to which they are not entitled. Fraud is a legal term that involves taking legal action to pursue a remedy of the situation, such as terminating program assistance.

*U.S. ex rel Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007). Here, Defendant certified the following when she entered into the HAP Contract with HACLA: (1) that she had not received and would not receive any payments or other consideration for the rental during the HAP contract term, except for the rent she was entitled to under the HAP Contract; (2) in the event that she did receive any excess rent payments from the tenant, she would return it immediately; and (3) if she failed to comply with any provision of the HAP Contract, she did not have the right to receive housing assistance payments under the HAP Contract. However, Defendant collected monthly subsidies from the public housing agency while simultaneously receiving excess side rent payments from the Plaintiff in violation of the requirements set forth in the HAP Contract. The Court finds that Plaintiff has sufficiently alleged a false statement based on a theory of implied false certification.

Next, Plaintiff must establish that the false certification was made with scienter. The scienter requirement is critical to the operation of the FCA and to the resolution of any claims brought within it. *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th. Cir. 1998). In order not to punish honest mistakes or incorrect claims submitted through mere negligence, Congress specifically amended the FCA to include scienter. *Id*. The FCA defines "knowing" and "knowingly" as having actual knowledge of the information, or acting in either deliberate ignorance to or reckless disregard for the information's truth or falsity. 31 U.S.C. § 3729(b)(1)(A). The Ninth Circuit has further explained that the requisite scienter is "the knowing presentation of what is known to be false," and that the false statement or fraudulent conduct must be made with knowledge of the falsity and with intent to deceive. *Hochman*, 145 F.3d at 1073; *Hendow*, 461 F.3d at 1172.

When Defendant executed the HAP Contract, she explicitly agreed to comply with the provisions therein. Therefore, Defendant knowingly violated the HAP Contract when she demanded and received side rent payments from Plaintiff while simultaneously receiving housing assistance payments. Plaintiff has alleged sufficient facts to plausibly infer that Defendant made false certifications with the requisite scienter, resulting in violation of the FCA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

The third element requires that "false statement or course of conduct must be material to the government's decision to pay out moneys to the claimant." *Ebeid*, 616 F.3d at 997. Establishing this element hinges on whether the false certification was relevant to the government's decision to confer a benefit. *Id*. Under the false certification theory, materiality is only satisfied where compliance with a law, rule or regulation is "a *sin qua non* of receipt of state funding." *Id*. at 998.

The HAP Contract that Defendant and HACLA entered into explicitly states that the owner of the rental property does not have a right to receive housing assistance payments under the HAP Contract unless the owner has complied with all provisions therein. Therefore, Defendant's false certification that she was not receiving any additional payments or consideration for the rental property was material to the government's decision to pay out moneys. Plaintiff has sufficiently alleged materiality.

Lastly, Plaintiff must show that there was an actual *claim*, meaning that the government paid out moneys or forfeited moneys due. *Hendow*, 461 F.3d at 1173. Defendant collected the HAP subsidy from the HACLA for the subject premises every month from October 2009 through September 2013, thereby receiving government moneys. Plaintiff has successfully alleged the fourth element of the FCA.

One of our sister district courts in the Ninth Circuit has also found violations of the FCA in a situation that is strikingly similar to the case at hand. In *United States ex rel. Mathis v. Mr. Property, Inc.*, No. 2:14-CV-00245, 2015 WL 1034332, at *1 (D. Nev. Mar. 10, 2015), a tenant alleged that the landlord violated the Section 8 housing voucher program and the FCA by charging the tenant illegal side payments while simultaneously collecting housing assistance payments under the HAP Contract. The Court denied the landlord's motion to dismiss and motion for summary judgment, finding that "side-payments or side-rent payments charged by the owner in addition to rent...would violate the HAP Contract and constitute fraud under the FCA." *Id*. at *4.

Similarly, in *Sutton*, a Section 8 tenant brought suit against the landlord under the FCA after the landlord required the tenant to pay extra money every month for the rental property. *Sutton*, 564 F. Supp. 2d at 1186. The Court denied the landlord's motion for partial summary judgment, holding that collection of additional rent beyond that allowed by a federally funded program is actionable under the FCA, and that the tenant had adequately supported a claim for violation of the FCA. *Id* at 1187-89.

Based on the foregoing facts, the Court finds that the Plaintiff has adequately alleged violation of the FCA. The second and third *Eitel* factors weigh in favor of granting default judgment on Plaintiff's FCA claim against Defendant.

    b.  *Defendant Retaliated*

Section 1942.5(c) of the California Civil Code states "it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory."

Although the general rule is that a landlord may evict a tenant for any reason or no reason at all, the landlord may not evict the tenant for an improper reason. *S.P. Growers Assn. v. Rodriguez*, 131 Cal.Rptr. 761, 768 (1976). Section 1942.5 is designed to protect tenants from certain types of abuses and, therefore, "it is to be liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed." *Barela v. Superior Court*, 178 Cal. Rptr. 618, 621 (1981).

In *Banuelos v. LA Investment, LLC*, 161 Cal. Rptr. 3d 772, 775 (Ct. App. 2013), a tenant of a mobile home park alleged that the owners retaliated against him in violation of section 1942.5 when they served him with a notice to vacate and filed an eviction against him after he complained orally and in writing to the City and the courts about the owners' alleged unlawful acts and omissions. The Court found that the tenant's complaint stated a caused of action for retaliation. *Id*.

Similarly, in *Barela*, a tenant claimed retaliation when her landlord sought to raise her rent and evict her after she complained to the police that the landlord sexually molested her nine-year old daughter. *Barela*, 178 Cal. Rptr. at 619. Prior to the tenant's complaint to the police, she had rented the property from the landlord for four years without any issues. *Id*. The court held that the tenant raised a legally cognizable defense of retaliatory eviction under Section 1942.5 of the California Civil Code. *Id*. at 624.

In the instant action, Plaintiff paid Defendant thousands of dollars in side rent payments from October 2009 through September 2013. In the Summer of 2013, after the Plaintiff's HACLA case worker informed him that it was unlawful for the Defendant to charge him extra rent, Plaintiff stopped making the additional payments and began to only pay the amount that the HAP Contract required of him. On September 19, 2013, Defendant executed and served on Plaintiff a 90-Day Notice to Move Out. On October 22, 2013, Defendant's counsel mailed a 90-Day Notice of Termination and Non-Renewal of Section 8 Contract to Plaintiff. This notice purported to cancel the Section 8 Contract and raise the Plaintiff's rent. On November 2, 2013, Defendant left multiple messages on the Plaintiff's answering machine that consisted of aggressive, abusive and profane language regarding Plaintiff's tenancy.

Based on the foregoing facts, the Court finds that the Plaintiff has adequately alleged retaliation in violation of California Civil Code section 1942.5. The second and third *Eitel* factors weigh in favor of granting default judgment on Plaintiff's retaliation claim against Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

      3.     *Sum of Money At Stake In the Action*

Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77. Plaintiff seeks the following: (1) an award of damages and civil penalties to the United States pursuant to 31 U.S.C. § 3729(a)(1); (2) an award to Plaintiff of the *qui tam* plaintiff's share of the proceeds or settlements pursuant to 31 U.S.C. § 3730(d); (3) actual and punitive damages for retaliation pursuant to California Civil Code § 1942.5 in the amount of $6,000.00; and (4) attorney's fees and costs. The amount of money that Plaintiff seeks is consistent with the allegations in the Complaint and the claims asserted. Accordingly, this factor weights in favor of default judgment.

      4.     *The Possibility of a Dispute Concerning Material Facts*

The fifth *Eitel* factor examines the likelihood of dispute between the parties concerning the material facts in the case. *PepsiCo*, F. Supp. 2d at 1177. When default is entered, all well-pleaded facts in the complaint relating to liability are taken as true. *Id*. If the plaintiff in a case has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote. *Id*. Since Plaintiff has supported his claims with ample evidence, and Defendant has failed to appear in this action or to contest the material facts alleged in Plaintiff's complaint, the likelihood of a dispute concerning material facts is minimal. Therefore, this factor favors granting default judgment.

      5.     *Whether Default Was Due to Excusable Neglect*

The sixth *Eitel* factor considers the possibility that the Defendant's default was a result of excusable neglect. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Here, the possibility of excusable neglect is remote. Plaintiff properly served Defendant with the First Amended Complaint on March 1, 2015. Thus far, Defendant has failed to answer the First Amended Complaint, defend herself against the allegations, oppose Plaintiff's Request for Clerk to Enter Default against Defendant, or seek relief from the default. Additionally, Plaintiff served Defendant with a Notice of Motion and Motion for Default Judgment on July 15, 2015 and Defendant has yet to respond. In light of the above, this factor favors granting default judgment.

      6.     *Strong Policy Favoring Decisions on the Merits*

The final *Eitel* factor examines the strong policy in favor of deciding cases on the merits. *Eitel*, 782 F.2d at 1472. Although, "cases should be decided upon their merits whenever reasonably possible," *Id*., "Rule 55(a) allows a court to decide a case before the merits are heard if the defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Although there is a strong policy presumption in favor of a decision on the merits, a defendant's failure to appear makes a decision on the merits impractical, if not impossible. *PepsiCo*, 238 F. Supp. 2d at 1177. The Court accordingly finds that the policy favoring decisions on the merits is outweighed by the impracticability posed by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

Defendant's absence in this case.

In sum, all of the *Eitel* factors weigh in favor of granting Plaintiff's motion for entry of default judgment.

### C.   Plaintiff is Entitled to the Relief Sought

Since allegations as to the amount of damages within a well-pleaded complaint are not taken as true upon entry of default, a Plaintiff is required to provide proof of all damages sought in the complaint. *PepsiCo*, 238 F. Supp. 2d at 1175. Rule 54(c) of the Federal Rules of Civil Procedure provides that "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Moreover, Rule 8(a)(3) limits this process even further by requiring a plaintiff's demand for relief to be specific and to 'prove up' the amount of damages. Fed. R. Civ. P. 8(a)(3); *Landstar Ranger*, 725 F. Supp. 2d at 923.

Plaintiff seeks the following: (1) an award of damages and civil penalties to the United States pursuant to 31 U.S.C. § 3729(a)(1) and 28 C.F.R. § 85.3(a)(9) in the amount of $619,447.00; (2) an award to Plaintiff of the *qui tam* plaintiff's share of the proceeds or settlements pursuant to 31 U.S.C. § 3730(d); (3) actual and punitive damages for retaliation pursuant to California Civil Code § 1942.5 in the amount of $6,000.00; and (4) attorney's fees and costs.

#### 1.   Statutory Damages Under 31 U.S.C. § 3729 and 28 C.F.R. § 85.3(a)(9)

On behalf of the United States Government, Plaintiff seeks damages and civil penalties in the amount of $619,447.00. Any individual who violates the FCA is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages which the Government sustains because of that person's actions. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9). "Ordinarily the measure of the government's damages [under the FCA] would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *U.S. v. Mackby*, 339 F.3d 1013, 1018 (9th. Cir. 2003) (quoting *U.S. v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966).).The government has a strong interest in preventing fraud because of the harm that false claims cause both in the form of monetary damages and harm to the integrity of the government. *See id*. at 1018-19.

For the duration of time that Defendant received side-rent payments from Plaintiff, she collected a total of $30,469.00 in housing assistance payments. Had Defendant been truthful about the extra payments she was receiving from Plaintiff, the government would not have distributed those monthly payments. Therefore, the United States Government sustained damages in the amount of $30,469.00 as a result of Defendant's false claims. The treble damages provision of the FCA makes the Defendant liable to the United States Government for damages in the amount of $91,407.00.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-02639 RGK (AJWx)** | Date | August 28, 2015 |
|---|---|---|---|
| Title | ***United States et al. v. Shu-Hwa Baran et al.*** | | |

In addition to the recovery of damages, the United States Government is entitled to an automatic civil monetary penalty per false claim. *See Mackby*, 339 F.3d at 1017. Plaintiff alleges that Defendant made 47 false claims and has requested $11,000.00, the maximum civil penalty for each claim, for a total civil penalty of $517,000.00.

Based on the Plaintiff's allegations in the First Amended Complaint, Plaintiff's Motion for Entry of Default Judgment, Plaintiff's supporting documents, and the government's strong interest in preventing fraud, this Court **GRANTS** an award to the United States Government of $608,407.00 in damages and civil penalties under 31 U.S.C. § 3729(a) and 28 C.F.R. § 85.3(a)(9).

2.  *Qui Tam Plaintiff's Share Under 31 U.S.C. § 3730(d)*

Plaintiff also seeks a 30% *qui tam* plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d). Under 31 U.S.C. § 3730(d)(2), if the Government does not proceed with an action under the FCA, the person who brings the action or settles the claim shall receive an amount that is not less than 25 percent or more than 30 percent of the proceeds of the action and shall be paid out of the proceeds. The Plaintiff ultimately receives an amount that the Court deems to be reasonable. 31. U.S.C. § 3730(d)(2). Here, Plaintiff seeks the maximum share permitted under the statute.

The primary purpose of the *qui tam* provisions of the FCA is to "set up incentives to supplement government enforcement of the Act by encouraging insiders privy to a fraud on the government to blow the whistle on the crime." *U.S. v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995). Recognizing the difficulty in detecting fraud, the lack of resources on the part of Federal enforcement agencies, and the significant threat facing both the federal treasury and national security, Congress undertook an extensive revision of the FCA to encourage more private enforcement suits by increasing incentives. *Id*. The right of a relator to recover under the FCA clearly exists to incentivize relators to bring claims. *Id*. at 964. Moreover, "the extent of the recovery is tied to the importance of the relator's participation in the action and the relevance of the information brought forward." *Id*.

The district court plays an important role in determining the amount that a *qui tam* plaintiff will receive within the range of 25-30% allowed. *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 723 (9th Cir. 1994). Certain factors inform the court's determination of what constitutes a reasonable share, including the degree of the relator's involvement in the case. *See U.S. ex rel. Pratt v. Alliant Techsystems, Inc.*, 50 F. Supp. 2d 942, 948 (C.D. Cal. 1999).

For instance, in *Pratt*, the Court held that the relator's active involvement in a claim where the government chose not to intervene, coupled with his specific efforts to cooperate with the government and to further its investigation, justified an award of 28% of the FCA proceeds. *Id*. The relator provided extensive investigative assistance to the government and even worked personally with government agencies to record conversations and to transcribe tapes. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

Other district courts have also focused on certain factors when determining a reasonable amount to award a relator. *U.S. ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1353 (S.D. Ohio 1992) *overruled on other grounds by U.S. ex rel. Smith v. Lampers*, 69 F. App'x 719 (6th Cir. 2003). In *Mazak*, the Court found that the *qui tam* Plaintiff pursued the FCA action at considerable personal and professional expense to himself, which justified an award of the full statutory amount of 30% of the settlement. *Id*. The court reasoned that an award of 30% would also encourage other potential whistle blowers to take similar risks to expose fraud against the United States. *Id*.

There is nothing in the record to suggest that Plaintiff's involvement in this case was significant. Unlike the relator in *Pratt*, Plaintiff did not provide extensive investigative assistance to the government. Moreover, this case is fairly straight forward and did not require Plaintiff to pursue this action at considerable personal or professional expense to himself. This Court finds that an award of 27% of the proceeds is in line with Congress' intent to incentivize the public to bring forward and pursue claims against individuals who are defrauding the United States Government. Therefore, this Court **GRANTS** an award to Plaintiff of 27% of the damages and civil penalties awarded to the United States Government. Plaintiff shall be paid out of the proceeds to the United States Government.

3.  *Actual and Punitive Damages Under Cal. Civ. Code § 1942.5*

Plaintiff seeks actual damages and punitive damages stemming from Defendant's retaliation. Plaintiff claims that Defendant committed the following three retaliatory acts against him after he refused to make side-rent payments: (1) Defendant demanded that Plaintiff move out of his home, without any cause, and threatened to bring an action to evict him if he stayed; (2) Defendant increased Plaintiff's rent by purporting to terminate the HAP Contract and hold him responsible for the full monthly rent to owner; and (3) Defendant harassed Plaintiff by leaving aggressive, abusive, and profane messages on his answering machine regarding his tenancy.

Any lessor who retaliates against a lessee in violation of California Civil Code section 1942.5(c) shall be liable to the lessee for any actual damages that the lessee suffers and for punitive damages in an amount of not less than one hundred dollars nor more than two thousand dollars for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act. Cal. Civ. Code § 1942.5(f).

If a plaintiff can prove that the defendant has been guilty of oppression, fraud, or malice, the plaintiff may recover punitive damages for the sake of example and by way of punishing defendant. Cal. Civ. Code § 3294. A plaintiff establishes malice by either proving that the defendant intended to cause injury to the plaintiff through his or her conduct or that the defendant carried on despicable conduct with a willful and conscious disregard of the rights or safety of others. *Id*. Oppression is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-02639 RGK (AJWx) | Date | August 28, 2015 |
|---|---|---|---|
| Title | *United States et al. v. Shu-Hwa Baran et al.* | | |

In *Rich v. Schwab*, 75 Cal. Rptr. 2d 170, 171 (Ct. App. 1998), the Court found that victims of a retaliatory rent increase were entitled to recover punitive damages under California Civil Code section 1942.5 in the amount of $653,000.

This Court finds that Defendant's conduct rose to the level of malice and oppression and that an award of punitive damages would set an example and deter Defendant from engaging in such conduct in the future. Defendant's conduct evidenced intent to cause injury to the Plaintiff and such conduct also subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Therefore, this Court **GRANTS** an award to Plaintiff of $6,000.00 in punitive damages under California Civil Code section 3294.

4. *Attorney's Fees and Costs*

Lastly, Plaintiff seeks an award of reasonable attorney's fees and costs. 31 U.S.C. § 3730(d)(2) provides that a *qui tam* plaintiff that brings a claim under the FCA is entitled to an amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorney's fees and costs. The Defendant is responsible for these expenses, fees and costs. *Id*. Moreover, the prevailing party in an action for damages under a theory of retaliatory eviction is entitled to an award of reasonable attorney's fees if either party requests attorney's fees upon the initiation of the action. Cal. Civ. Code § 1942.5(g). The Court finds that the Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment. The Court awards the following: (1) $608,407.00 to the United States Government for damages and civil penalties; (2) Plaintiff's 27% *qui tam* share of the proceeds to the United States Government; (3) $6,000.00 in punitive damages to the Plaintiff for retaliation; and (4) reasonable attorney's fees and costs to the Plaintiff.

The Court **ORDERS** Plaintiff to file a proposed judgment consistent with this order **within ten days.**

**IT IS SO ORDERED.**

_____ **:** _____

**Initials of Preparer**    _____